We'll hear counsel in our last case on the day calendar, Frommert et al. v. Conkright et al. Thank you. Ms. Brannon, go ahead. May it please the Court, my name is Elizabeth Brannon and I represent the appellants. We urge this Court to reverse because the District Court committed three errors. First, it did not even reach one of our two causes of action, the cause of action for our claim for benefits under a proper interpretation of the plan. Second, as to the cause of action it did reach, the District Court awarded an inadequate equitable remedy for Xerox's ERISA notice violation, a remedy that itself would have been actionable as both an ERISA notice violation and a violation of the terms of the plan. Finally, the District Court awarded inadequate prejudgment interest at a rate and on a basis simple instead of compound that allowed Xerox to profit from violating ERISA. Let me turn to the first point, why it was error for the District Court to not even reach the claim for plan interpretation. We have always had two different claims for relief in this case. One is a claim to benefits under the reasonable interpretation of the Xerox pension plan in this case. The other is for equitable relief based upon ERISA's notice violation. On remand, it made sense to take that second question first because this court held in 2013 that there was a clear violation and there was also, as the District Court found, a clear basis for an equitable remedy. But the equitable remedy that the District Court ordered was less- The new higher remedy. That's correct, Your Honor. And the new higher remedy basically ignores the first stint of my client's employment at Xerox when calculating the benefits that they are due. So an equitable remedy doesn't have to be a perfect remedy, is that right? It doesn't have to be perfect. One of the things that the District Court tried to do here based on the law of the case was to try to create a remedy or fashion a remedy that didn't provide a windfall to the plaintiffs but also provided them with some measure of real relief, is that right? It did try, Your Honor. When I talk about the second error, I would like to explain why I believe it failed necessarily in that effort. But the more important point for the first argument I'm trying to make is that because the equitable relief that the court found appropriate was less than what we contend my clients would get under a reasonable interpretation of the plan. Our plan interpretation claim was not moot. It was absolutely error for the court to decline to hear that claim once it fashioned equitable relief. That was less generous than the least generous non-arbitrary interpretation of what the plan requires. There was no basis. It was textbook error for the district court to not decide the benefits claim. At a minimum, the court should address that on remand. And when it does so, we ask- When you say not to decide the benefits plan, not to interpret the plan in a particular way, what does that mean? We had a motion for an interpretation of what benefits would be due under our claim for benefits under 501A1B. Our claim for benefits as required by a reasonable interpretation of the plan. Our claim was that under any reasonable non-arbitrary interpretation, the relief awarded would have to amount to the layout offset, which is the nominal deduction of the amounts my clients actually received after their first stint of employment, or the actual annuity offset. Those, we argued, are the only interpretations of the plan that are non-arbitrary and viable under our benefits claim. And more or less precluded by the law of the case? It is not, your honor, for this reason. It is correct that in 2007, the district court awarded layout and this court affirmed. The Supreme Court reversed on the grounds that that was an interpretation issued without deference to the plan administrator. And the Supreme Court said, well, one honest mistake will not deprive the administrator of deference. We're now to the point where there have been not one, but two mistakes that this court has held were unreasonable interpretations of the plan. And in 2013, when this court made clear that at a minimum, the plan could not be interpreted worse than new hire, Xerox declined to pay that. That ruling happened in 2013. We had to make a motion in 2014 to even get them to pay it. Are there plaintiffs who, when they left Xerox the first time, did not receive pensions? That is a good question, your honor. I believe the answer is yes. I will have to check that detail. Well, as to those, as to anybody in that circumstance, treating them as a new hire without taking into consideration the time that they were employed prior to first leaving Xerox would leave them in a worse position than new hires. I think it's correct. The relief awarded would leave multiple clients of mine in a worse position than actual new hires. Because for actual new hires, the rate of highest average pay applied to all of their years of service. That's what the plan promises, and that's what my clients were repeatedly promised. And the equitable remedy that was awarded is insufficient because it fails to accomplish that. The district court erred in that respect. Only layout or the actual annuity offset can come close to approximating both what the plan required and what my clients were told. The district court's award of prejudgment interest was also an abuse of discretion. It awarded simple rather than compound interest at a rate that was too low. Excuse me for one moment. Does Larimer use the so-called federal primary, did he? He did, your honor, and that amounted to basically 3.25% as we point out at our reply brief at page 25. The reason why that was an abuse of discretion is twofold. First, someone who actually received the benefits they were owed many years ago would have received them and been able to invest them, and the returns would have compounded. We requested an award of compound interest, and the district court denied it without explaining why. That was plainly error, and it's error my friend doesn't even try to defend. But second, the 3.25 rate was too low for the following reason. The district court stated its intention, and this is at the special appendix 66 and 67. It said this court's intention is and has been to ensure that all the plaintiffs end up in at least as good a position as they would be in, had they been paid under the new higher remedy at the time of final separation from Xerox. Xerox failed to pay for many, many years, and the rate that the district court awarded was too low. Xerox undisputedly had a cost of capital that was almost 9%. The rate awarded basically gave Xerox a below market loan from my clients for many years. That rewards violations of ERISA in a manner that this court cannot condone, and that we would urge you to reverse. Turning to the question about whether the Supreme Court has foreclosed the layout remedy, I believe it has not for this reason. One of the claims that we had below is that Xerox has evidenced bad faith, including bad faith that has happened since that decision, and that as a result of that bad faith, and those plan interpretations that evidence serial incompetence, the administrator is no longer entitled to deference. And if that's true, then the layout interpretation that the district court ordered in 2007 and that this court previously affirmed is the appropriate interpretation we submit, or at a minimum- If you use that interpretation, what's the delta between the amount that your clients, the plaintiffs, are owed under this new higher remedy and the layout, I was pronouncing it differently, but the other remedy. It's a good question, your honor. I would direct you in the appendix to page 503. It's not going to clearly answer your question, but at least that's a chart that Xerox submitted that tries to show the differences in the awards, in the relief that we awarded under layout versus new higher. 503, A503. Microscopic print, yes. It's not your fault. And yet I- What is it that one is, what does one learn by turning to A503 with a microscope? What it would give you a sense of, your honor, is that layout, the layout column is nearly always higher than the new higher columns. And so it does, I don't have at the tip of my tongue a way to quantify the difference that we're talking about between those things. But that's one of the sources in the record that could help at least ballpark or show that it's a meaningful difference. And there's a reason why Xerox has fought so hard to try not to have to pay what it promised my clients. Another thing I can direct you to is the page 66, the district court has noted that the layout offset appears to be more generous. And in fact, Xerox ordered some clients who had received it. Xerox filed a motion which was denied and is not at issue on appeal, but asking that some clients who had received layout be ordered to repay it. And so you know it's not, we're not fighting over something minuscule. It's something that matters. My clients were promised these benefits long ago, and it's, please, time, it's been a long time, and something should be done to ensure that they receive what they were promised. What was the last page reference? That is the district court's opinion from May 4th, 2017. I believe it's at SA 66 and- A66. Special appendix, yes, SA 66. Thank you, your honors. Thank you. Sorry. Good afternoon, your honors. My name is Margaret Clemens, and I'm here to represent the appellees, the Xerox Retirement Income Plan and its plan administrators. Your honor, we believe that the district court's decisions and orders which granted the plaintiffs the remedy that they sought below and granted them pre-judgment interest should be affirmed basically for two reasons. First, the plaintiffs have not shown and met their burden of proving that the district court's decision and orders were an abuse of discretion. And second, the district court was not writing on a blank slate. The district court had the benefit of this court's decision in 2013, and as well as the Supreme Court's decision in 2010, outlining very clearly what remedies should be in effect for the notice violation that was found by this court in 2006. And contrary to what opposing counsel said, the remedy for the violation of the notice provision that was found in 2006 was not a plan interpretation. In 2013, this court said because there was a notice violation, the first thing the court should do on remand was look to see if an equitable remedy was appropriate. And only if it found that an equitable remedy was not appropriate should it look to the issue of plan interpretation. So that's what the district court did. The law of the case. That's the law of the case. And Justice Kirsch was on that panel. So the district court did exactly what this court told it to do on remand. And following the Supreme Court's decision in O'Mara v. Cigna, it looked to see whether it should, it looked to see all three of the equitable remedies that plaintiffs. The counsel for the plaintiffs agreed at some point, I thought you suggested that they agreed at some point that a new hire remedy was appropriate? They did. Where is that? It's at several pages. And we cited them in our brief. For example. Is that at earlier stages, much earlier stages? It is at much earlier stages, but it was through 2010. For example, throughout the administrative claims process. Your friend wants to be of help. I understand. We have several sites to it at page 26 of our brief. And in the record, it's probably more than 100 pages. And it's cited at A916 to probably 1100. Where throughout the claims process, they put in letters saying they wanted to be treated as no worse than new hires. It's in the complaint in this case. At paragraphs 42 and 111. And it was, they asked for it in 2010 to be treated as new hires. And there was a reason for that. The reason was because they knew they weren't going to get paid duplicate benefits for their first term of service. And to answer your question, Judge Hirsch. I'm sorry. There is no plaintiff in this case who did not receive a lump sum benefit for their first period of service. Based the full amount based on their first period of service. And that really is not in dispute. And that's why this court, the district court, looked at the plan reformation. And said the plaintiffs have been able to show a mistake on their part about what the plan's terms were. In inequitable conduct on the part of the defendants in not explaining the offset provision. A notice violation. It's a notice violation. And that triggers the search for an equitable remedy. Exactly. Same as it did in Amara versus Cigna. And the same reformation equitable remedy that this court found was appropriate there. Not the most generous remedy that the plaintiffs wanted, same as in Cigna. The plaintiffs wanted to go back in Cigna to the original plan, which was A, and wanted that to apply to their entire course of conduct, entire course of employment. And this panel of the Second Circuit that heard that said, that's not appropriate. They're not entitled to a windfall. It's not what the parties ever planned, or not what they ever were expected. But a reasonable equitable remedy. Same thing this court found here. These plaintiffs never thought that they would be paid duplicate benefits. And that's why their early letters and their complaint. And what they reasonably expected to be paid were important. They never were expected to be paid duplicate payments for their first period of service, and they weren't. The court then said we're going to equitably treat them with no offset for their second period of service. And that's why the notice provision doesn't matter, because there's no offset. They were treated the same as a new hire for their second period of service. Let me ask you about prejudgment interest. Yes, your honor. What, and it's a very short justification from the district court. But we have, it's the difference between 9% and 3.25 or 5. I used to know what the prime rate was every day, unfortunately, in my life, but I no longer need to know that. But it's a significant 5.5%? It was, it's not exactly. It depends on when the plaintiff, he adopted the prime rate, which is variable over time. So for each plaintiff it was different. But roughly, it's a delta of- It's a delta, but it varied over time. And if you look at the back of our brief, we put in how much each plaintiff was paid. It's at SPA 113, it actually has the date they left Xerox. So they left from 1997 during their second period, all the way to 2015, that's when they retired. Some of these people were still working when the remedy decision was issued. So their date of prejudgment interest depended upon when they took their retirement benefits out of the plan. So they could have gotten prejudgment interest based on the prime rate that was in effect when they took their retirement benefit. So it could have been 3.5, but I can't answer that for certain. Because for different people, it was different dates. And that's why the judge said that was a fairer rate than just using a flat rate of 9%. And he relied on cases that were in the Second Circuit and thought that was a fairer rate than using 9% over the whole period of time. What about compounding versus simple? He did not compound it because he thought that using the prime rate was a better, a fairer amount because it closer reflected what the plaintiffs could- A lower rate non-compounded? Was fair to show what the plaintiffs could get. Well, even under New York, it wouldn't be compounded to the New York statutory rate. We had asked for the post-judgment interest rate of section 1961. He rejected that and relied on some cases in this circuit that were the prime interest rate. And there were several, including in the ERISA context, where the court chose the prime rate. Because it was variable over time, and it mirrored what the plaintiffs could get if they had to borrow money. So he detailed his decision in that regard. The plaintiffs were received approximately, as a group, about $900,000 in post-judgment interest. Also, it's discretionary under ERISA whether they receive pre-judgment interest at all. And he actually overlooked the fact that they didn't ask for pre-judgment interest in a timely manner. So he was actually very generous to these plaintiffs in awarding any interest, to begin with, because they had not made that motion on time. I will say that these plaintiffs have already been paid approximately, well over $12 million in additional benefits to date, based on this new higher approach. In fact, if you need the figures, they're on pages SPA, which is in the back of our brief, 110 and 111, and yes, I apologize for them being microscopic. But no plaintiff was paid less than what the plan provides. I know, you're terrible. This topic is being generous, but okay. But if you look at the last column, the plaintiffs were paid an additional- Fictional new higher approach. They were paid $12 million. Some of them received payments during it, based on the plan administrator's approach of $6 million. For example, there's a point in the plaintiff's brief where they represented that Mr. Frommert was receiving a pension of $5, that's not the case. He never received a monthly pension of $5, that's not the case. He received a payment when he took his pension in 2010 of about $86,000 because he took it in a lump sum. And then he received the court's remedy, which brought him up to about $257,000. So there's facts in the plaintiff's brief that are just not correct. So I do want to point that out to you. We believe that the court made a very fair remedy, never had to reach the plan interpretation of the plan. Contrary to what opposing counsel would have you believe, that the remedy it reached was fair and equitable. It wasn't a windfall to the plaintiffs, but it was a fair and equitable remedy that was based on pre-judgment interest. Therefore, we'd ask the court to affirm the decision of the court below. Thank you, Ms. Clemmons. Ms. Brannon, you've reserved one minute. Are you with the Los Angeles Law Firm? Yes, Your Honor, Estresa Maher. Yeah, because you didn't sign the brief, I just wanted to make sure. I'm just a clerical person here. If I may, I'd like to try to briefly respond to five points. First, the chart that my friend was talking about, where she talked about the plan interpretation, that's the same plan interpretation we challenge as unreasonable that the district court didn't even reach and should have reached. Second, it is absolutely not the law of the case or the directive from this court in 2013 not to reach our claim of plan interpretation. What this court said, what it assumed was that if an equitable remedy was awarded, that remedy would amount to the relief we were seeking, i.e. the layout offset or the actual annuity offset. When the district court decided to craft an equitable remedy that was less than that, there is- Is it correct that, not you necessarily, but counsel for plaintiffs have at various points in the past urged the adoption of a new hire? In litigation, we have said you cannot treat them worse than new hire. We have never said that new hire was an appropriate interpretation of the plan. It is not. That's why this court held that it was not in 2006 and again in 2008. Because the plan language very clearly says that under that formula, all years of service will count. They are the ones that urge new hire. We were eating, now in the administrative process, certain clients said, you can't treat us worse than new hire. Others said, we'll take new hire. Others said layout. It was all futile. And so the stuff from the administrative proceedings absolutely isn't a waiver of the litigation request that we have always had to be. Let me just understand your question with respect to farmer three, the 2013 decision. You think that there is an equitable remedy that's available. We do think there is an equitable remedy that's available. And the district court abused its discretion by awarding equitable relief that itself would have been actionable. So you don't think that it should have, it needed to separately consider the unreasonable interpretation claim? I do think that, your honor. Once it awarded- We said, if it finds that no equitable remedy is available. You say that there is an equitable remedy that's available. Your honor, this court did not say, if and only if you find an equitable remedy of $1 available, everything else is moot. That is, you cannot read the language that way. Federal courts decide the claims before them. If the equitable relief awarded was insufficient under, was not as generous as our claim for plan interpretation as we contend, then at a minimum, that claim had to be reached. And this court, there's no way a fair reading of that foreclosed it. The final two points I wanted to try to squeeze in, it's not a windfall if it's what you were promised. And my clients were promised layout, as this court had previously held. And the statutory rate would be compounded, even in the cases they cite. There was just absolutely no basis to award simple prejudgment interest. We reserve decision and we're adjourned. Court is adjourned.